Glenda GRAVES, Appellant,

v.

Harvey KOMET, M.D., P.A. d/b/a Hearing Solutions; Harvey Komet, M.D., Individually, Appellees.

No. 04–98–00374–CV.

Court of Appeals of Texas, San Antonio.

Oct. 28, 1998.

G. Wade Caldwell, Denise M. Nixon, Martin, Drought & Torres, Inc., San Antonio, for Appellant.

Susan Stone, Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, for Appellees.

Before HARDBERGER, C.J., and RICKHOFF and STONE, JJ.

## OPINION

HARDBERGER, Chief Justice.

Glenda Graves appeals the grant of summary judgment in favor of the defendants, Harvey Komet, M.D. and Harvey Komet, M.D., P.A. d/b/a Hearing Solutions ("the Professional Association") (collectively, "Komet") on her retaliatory discharge claim. Graves complains on appeal that the trial court erred in granting Komet's motion for summary judgment because she had presented evidence sufficient to raise a genuine issue of material fact. We affirm the trial court's granting of Komet's summary judgment.

## FACTS AND PROCEDURAL HISTORY

Graves was employed by the Professional Association as a sales and marketing director for Hearing Solutions, an ancillary business formed by Komet to provide hearing tests and dispense hearing aids. In her position, Graves was the immediate supervisor of Melissa Wiley, an audiologist employed by Hearing Solutions. Wiley reported to Graves that Dr. Milgrim, an ENT doctor who worked with Komet, had behaved in an inappropriate manner toward her. Graves reported this conduct to Komet, who requested that Wiley make a written statement. Wiley and Evelyn Crisp, the office manager, met the following day, at which time Wiley gave an oral statement and was questioned about the alleged conduct by Crisp. Graves was present at this meeting.

Komet met with Milgrim and told Milgrim he would fire him if it happened again. Komet then met with Wiley, again with Graves in attendance, to discuss the issue and its resolution. Subsequently, Komet spoke with Wiley by telephone about a statement regarding the issue that he wished for her and Milgrim to sign. Wiley called Graves to discuss the statement with her.

Graves later ran into Komet in the parking garage at the office and spoke briefly with him about the statement. Graves said that Komet told her (Graves) that Wiley would be fired if she did not sign the statement. Komet denies making this statement, and Wiley's testimony supports his contention that she was never told that her job was predicated upon her signing the document. Graves then went on vacation.

During Graves's vacation, Komet and Wiley met, at which time Wiley ended her employment relationship with Hearing Solutions. During this conversation, Komet told

Wiley that he would "take care of Graves when she got back." Upon Graves's return, she was terminated by Komet. The stated reason for her termination was Graves's poor performance, namely, Hearing Solutions's projected net losses. There is some testimony that Komet also referred to the "turmoil" Graves had caused regarding the situation with Wiley.

Wiley and Graves both filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Subsequently, both Graves and Wiley filed suit against the Professional Association and Dr. Komet, individually, alleging sexual harassment, breach of contract (an alleged employment agreement between Graves and the Professional Association), fraud, and retaliatory discharge. Wiley's claims were severed from Graves's claims.

Komet moved for summary judgment as to all of Graves's claims. The trial court granted a partial summary judgment as to Graves's retaliatory discharge claim, as well as a commissions/bonus claim of which Graves does not appeal. Graves and Komet then severed the retaliatory discharge claim for purposes of perfecting this appeal. An order of severance was entered.

## DISCUSSION

Komet moved for summary judgment under the new "no-evidence" summary judgment rule, Rule 166a(i) of the Texas Rules of Civil Procedure, or, alternatively, under the traditional summary judgment rule governing a defendant's motion, Texas Rule of Civil Procedure 166a(b). Summary judgment is proper when no genuine issue of material fact exists, entitling the moving party to judgment as a matter of law. TEX.R. CIV. P. 166a(c).

### RULE 166A(I) —NO EVIDENCE MOTION

Effective September 1, 1997, Rule 166a(i) allows a litigant to move for summary judgment as to all or part of a lawsuit on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); W. Wendell Hall, *Standards of Re-* *view in Texas*, 29 ST. MARY'S L.J. 351, 418 (1998). A party may move for a "no-evidence" summary judgment only after an adequate opportunity for discovery. TEX.R. CIV. P. 166a(i). Rule 166a(i) requires the moving party to state the element(s) as to which there is no evidence, but it does not require the moving party to present summary judgment evidence.

■ "A no-evidence summary judgment is essentially a pretrial directed verdict," so we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Taylor–Made Hose, Inc. v. Wilkerson*, No. 04–97–01025–CV, 1998 WL 553443 at *2, —— S.W.2d ——, —— (Tex.App.—San Antonio August 31, 1998, n. pet. h.) (quoting Judge David Hittner and Lynne Liberto, *No–Evidence Summary Judgments Under the New Rule*, in STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997)); *Moore v. K Mart Corp.*, 981 S.W.2d 266, 268 (Tex.App.—San Antonio June 24, 1998, n. pet. h.).

■ We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Taylor–Made*, 1998 WL 553443 at *2, —— S.W.2d at ——. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX .R. CIV. P. 166a(i); *see also Merrell Dow*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Taylor–Made*, 1998 WL 553443 at *2, —— S.W.2d at ——. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow*, 953 S.W.2d at 711.

■ When viewed in the light most favorable to her, Graves has brought forth more than a scintilla of probative evidence to raise a genuine issue of material fact, so the summary judgment cannot stand under a no-evidence Rule 166a(i) motion.

### RULE 166A(B) —DEFENDING PARTY'S MOTION

Rule 166a(b) permits a defending party to seek dismissal of a claim at any time. TEX.R. CIV. P. 166a(b). When reviewing the grant of a summary judgment, we follow these well-established rules: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in favor of the non-movant. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985)). Summary judgment is proper if the defendant disproves at least one element of each of the plaintiff's claims, or establishes all elements of an affirmative defense to each claim. *Id.*

### RETALIATORY DISCHARGE

Graves alleged that Komet terminated her for opposing an unlawful employment practice, namely, sex discrimination as manifested by sexual harassment, in violation of the Texas Commission on Human Rights Act, as codified in section 21.055 of the Texas Labor Code. Section 21.055 provides that an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who, under chapter 21:(1) *opposes* a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or *participates* in any manner in an investigation, proceeding or hearing.[1] TEX. LAB.CODE ANN. § 21.055 (Vernon 1996) (emphasis added). Because our

state statute tracks its federal counterpart in title VII of chapter 42 of the United States Code, we may consider analogous federal case law in the interpretation and application of our Texas statute. *Trico Technologies Corp. v. Rodriguez,* 907 S.W.2d 650, 652–53 (Tex.App.—Corpus Christi 1995, no writ); *Benavides v. Moore,* 848 S.W.2d 190, 193 (Tex.App.—Corpus Christi 1992, writ denied).

The burden-shifting analysis articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) governs retaliatory discharge claims brought under the Human Rights Act. *See Department of Human Services v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995).

In order to successfully assert a claim of retaliatory discharge, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination, which, when established, gives rise to a presumption that the employer unlawfully discriminated against the employee. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. A plaintiff proves a prima facie case of retaliatory discharge when she shows: 1) she engaged in a protected activity; 2) the employer took an adverse employment action; and 3) a causal connection between the protected activity and the adverse employment action. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 705 (5th Cir.1997).

The burden then shifts to the defendant/employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The employer is not charged with the burden of persuading the trier of fact that it was actually motivated by the proffered reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Rather, the employer meets its bur-

---

**1.** Chapter 21 of the Texas Labor Code was enacted for the purpose, among others, of executing the policies of its federal counterpart, Title VII of

the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. §§ 2000e et seq. TEX. LAB. CODE ANN. § 21.001(1) (Vernon 1996).

den by setting forth through admissible evidence a reason for dismissal legally sufficient to justify a judgement in its favor. *Id.* at 254–55, 101 S.Ct. 1089.

Upon the employer's articulation of a legitimate, nondiscriminatory reason for discharge, the presumption raised by the prima facie case is rebutted and it drops from the case. *St. Mary's Honor Center,* 509 U.S. at 507, 113 S.Ct. 2742. At this point the plaintiff carries the burden of proving that the employer's proffered reason is a pretext for discriminatory conduct. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. A plaintiff meets this burden when she either directly persuades the trier of fact that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. The ultimate burden of persuading the factfinder that the employer engaged in intentionally discriminatory conduct remains at all times with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

### 1. Prima Facie Case

■ Graves argues that her actions in lending aid and support to Wiley with regard to her sexual harassment claim constitute a protected activity—"opposition to unlawful employment practices" within the scope of Texas Labor Code section 21.051 and Title VII—in satisfaction of the first prong of the prima facie case of retaliation.

Komet responds that Graves's actions were passive facilitation of a sexual harassment complaint, and that Graves herself did not *oppose* a discriminatory employment practice. To the contrary, Komet argues, Graves at most *participated* in an internal investigation. Because this investigation and surrounding activity were not in regard to a formal EEOC or Human Rights Act complaint, Komet asserts that Graves's participation falls outside the scope of statutorily protected activity, and her claim fails on the first prong.

Sexual harassment, of course, is an unlawful employment practice. An employer can be held liable for not adequately responding to such a claim. The issue here, though, is whether Graves met her burden of establishing that her conduct was "opposition" to an unlawful employment practice. The handful of cases supporting a coworker's retaliatory discharge claim under the "opposition" clause are readily distinguishable from the instant case. *See Berg v. La Crosse Cooler Company,* 612 F.2d 1041, 1043 (7th Cir.1980) (finding coworker's encouragement of fellow employee to seek maternity benefits when she knew company did not offer them, because of her belief that such denial violated sex discrimination laws, to be opposition for purposes of retaliatory discharge claim); *Jenkins v. Orkin Exterminating Co.,* 646 F.Supp. 1274, 1277–78 (E.D.Tex.1986) (holding that coworker's report of sexual harassment of colleague to corporate headquarters, calling for investigation and resulting in his termination, constituted protected opposition). *Cf. Jones v. Flagship Int'l,* 793 F.2d 714, 727–28 (5th Cir.1986) (deciding that company attorney's solicitation of discrimination complaint against company from another employee, or merely giving "aid and comfort" to that employee when it was inconsistent with her job responsibilities, caused attorney's retaliatory discharge claim to fail).

Graves failed to meet her burden of establishing that her conduct rose to the level of "opposition" within the meaning of the statute for several reasons. First, Graves was Wiley's supervisor (unlike the complainants in *Berg* and *Jenkins* ), and, as such, was required to report this conduct to Komet (who was Milgrim's supervisor) when she learned of it. While she might have been personally offended by the conduct, her reporting was not the product of her own indignance (like the plaintiffs in all of the above-cited cases). Rather, it was a ministerial task required by virtue of her position as Wiley's supervisor.

Second, while Graves facilitated the reporting of the incident, and was present during the interviews with Wiley, the only thing she can be said to have opposed was Wiley's signing the purported release. A copy of the document does not appear in the record. The testimony indicates that the document stated that the situation had been resolved, but was not a release or waiver of claims. Graves's opposition to Wiley *signing the doc-*

**556**

*ument* is not necessarily opposition to *an unlawful employment practice.*

Requiring an employee to sign a document might, or might not, be an unlawful employment practice. It depends on what the document says. We don't know what it said. The party seeking to show the unlawful employment practice has the burden of proof. This burden was not met here, even for summary judgment purposes.

In order to state a retaliatory discharge claim, the opposition has to be to an *unlawful employment practice.* We know only the following: Wiley was the victim of sexual harassment. Graves, as Wiley's supervisor, and Komet acted immediately upon learning of the alleged sexual harassment. They did so in a manner specifically designed to eliminate the offensive conduct. If Komet did anything wrong, it would be in asking Wiley to sign something that was oppressive or unreasonable. If Komet did that, then Graves would have had something to oppose that could rise to a cause of action. But without the document, or other credible evidence of what the document said, the trial court had no other choice than to grant the summary judgment.

### CONCLUSION

Graves's conduct failed to meet her burden of establishing that her conduct constituted "opposition" within the meaning of the statute. We affirm the summary judgment.